Certiorari was granted under Rule 39 (c)(4), A.R.A.P. The facts of this case are recited in the opinion of the Court of Criminal Appeals, 474 So.2d 158. Briefly, those facts show that Agee, a state prisoner, petitioned the Jefferson Circuit Court, Bessemer Division, for a writ of habeas corpus. That court, after an evidentiary hearing, denied the writ. Agee appealed that decision to the Court of Criminal Appeals, which affirmed the trial court's denial and later overruled Agee's application for rehearing.
It was established below that Agee was convicted of larceny on January 20, 1970, and sentenced to a term of one year and a day in the State penitentiary. Agee, 17 years of age at the time, was placed on probation. Probation was later revoked, and he began serving his sentence on January 29, 1971, at Draper Prison. On June 14, 1971, Agee was again convicted of larceny and was sentenced to a seven-year penitentiary term to run concurrently with his prior sentence.
Agee contends that on July 4, 1971, he was released from Draper Prison and told that he was being placed on probation or parole and would be contacted by the proper authorities. The State of Alabama contended *Page 162 
below, and here, that Agee was not released but that he escaped from prison by changing from his prison uniform to civilian attire and "walking out with a visitor."
After leaving his confinement, Agee went to live with his father in Birmingham for two months. He then moved to Chicago, returned to Birmingham, and went back to Illinois. No one from the prison or parole authorities ever contacted him during the 12 years he was free, even though, meanwhile, on August 27, 1971, Agee had been indicted by the Elmore County grand jury. On July 7, 1983, Agee was returned to Alabama on a fugitive warrant for escape. He was given a disciplinary board hearing, after which the board found that Agee had violated an institutional regulation on escape. Agee lost store, telephone, and visitation privileges for 60 days; however, the felony escape charge against him was nol-prossed.
In its opinion, the Court of Criminal Appeals held that:
 "It follows necessarily that if he was released, instead of escaping, at that time, he was released mistakenly. It follows also that any mistaken release, even by an agent of the prison authorities, does not necessarily constitute a valid release."
The defendant contends that this holding runs counter to well-established legal precedents, and the State of Alabama concedes, as it must, that it was error not to apply those authorities. These are collected and explained in Hartley v.State, 50 Ala. App. 414, 417-418, 279 So.2d 585, 587-588 (1973), whose pertinent part we quote:
 "Appellant relies on King v. State, 16 Ala. App. 118, 75 So. 710; Blackwell v. State, 19 Ala. App. 553, 99 So. 49. In King the petitioner had been convicted of grand larceny and was sentenced to thirteen months in the State Penitentiary. On the same day and by the same court, he was also convicted of petit larceny. Being unable to pay the fine and costs in the petit larceny conviction, he was sentenced to fifty-nine days hard labor for the county to commence at the expiration of the sentence received in the grand larceny conviction. Upon completion of his sentence in the grand larceny conviction, he was told his time was up and he was free to go home. Three months after his release he was arrested by the sheriff and placed in the county jail to serve the sentence he received in the petit larceny conviction. In granting petitioner's writ of habeas corpus, the Court pointed out:
 "`. . . [I]t can be seen that the officers having custody of this convict manifested a gross carelessness and ignorance in the discharge of their duties under these statutes [now Tit. 45, § 32, Code of Alabama, 1940, Re-compiled 1958], and that by virtue of such carelessness or ignorance, the second judgment of conviction against the petitioner cannot be put into operation. The convict, having been discharged and given his liberty by the officers having him in custody, cannot be called upon after the expiration of the period covered by his sentence, to enter again into penal servitude, and therefore the action of the sheriff in arresting petitioner is without authority of the law and is void. . . .'
". . .
 "What we have in this case is a defendant who had been sentenced to six years imprisonment, then subsequently sentenced to another two years on a different offense at a different time. Petitioner served the two years on the latter offense and was released, without fault on his part, not having served any time on the prior offense. Upon being apprehended on other charges, the mistake was discovered; and, since the time for serving the six year sentence had not expired, he was returned to prison to serve the unexpired portion. Thus, he received credit for the time he was at liberty.
 "It is our conclusion that the trial judge ruled correctly. The case of White *Page 163 v. Pearlman, 10 Cir., 42 F.2d 788, is persuasive on this point. There the Court stated:
 "`A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installment. Certainly a prisoner should have his chance to re-establish himself and live down his past. Yet, under the strict rule contended for by the warden, a prisoner sentenced to five years might be released in a year; picked up a year later to serve three months, and so on ad libitum, with the result that he is left without even a hope of beating his way back. It is our conclusion that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty. As tending to support this conclusion, see Ex parte Eley, 9 Okla. Cr. 76, 130 P. 821; In re Jennings (C.C.Mo.) 118 F. 479, opinion by Circuit Judge Thayer; In re Strickler, 51 Kan. 700, 33 P. 620. . . .'" (Emphasis added.)
Notwithstanding this authority, the State of Alabama argues that the error below in failing to apply these precedents was inconsequential. The controlling question, says the State, is whether the petitioner escaped or whether he was released from Draper Prison. According to the State, this question of fact was decided by the trial court, which found, after a hearing, that the defendant did escape. The petitioner maintains, on the other hand, that the trial court's finding was erroneous on two distinct grounds. For one thing, he claims, the trial court relied upon the findings of the disciplinary board, which failed to meet due process requirements. For another, he says, the trial court erred in its findings because there was no evidence adduced by the State in the trial court hearing to contradict the defendant's testimony that he was released.
Each of the petitioner's arguments has merit. In Barker v.State, 437 So.2d 1375 (Ala.Crim.App. 1983), the Court of Criminal Appeals recognized that a report of a prison disciplinary board, in order to meet the due process requirements of Wolff v. McDonnell, 418 U.S. 539,94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), must contain a "written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action." Indeed, in Fielding v.State, 409 So.2d 964 (Ala.Crim.App. 1981), the court held that a disciplinary board report with such deficiencies could not support the State's motion to dismiss a petition for habeas corpus. Such a result follows from the Wolff decision that the constitutional mandate of due process is absent when the disciplinary board report does not contain those requirements. Thus, the disciplinary report here, being constitutionally deficient, had no evidentiary standing, and it was error to consider it.
On petitioner's other ground, it is clear from the record that Agee himself was the only witness to testify at the hearing in the trial court on his habeas corpus petition. His evidence repeatedly characterized his departure from prison as a release by the prison authorities at Draper Prison. No other evidence was offered on that subject; hence, there was no evidence contradicting Agee's affirmative explanation of his release.
The State nevertheless defends the finding of the lower court, because, it argues, Agee's "self-serving" testimony did not satisfy his burden of proof. However, an examination of his petition discloses compliance with Code of 1975, § 15-21-4, which the State does not contest. And, petitioner, having introduced evidence of his illegal detention, placed the burden on the State to show a legal restraint. It is clear from the record of the proceedings below that the State wholly failed to carry its burden. It follows that under the authorities, supra, petitioner's seven-year sentence expired on June 14, 1978,i.e., seven years from the judgment and sentence *Page 164 
of June 14, 1971. Therefore, the judgment of the Court of Criminal Appeals is reversed, and this cause is remanded to that court with directions to enter an appropriate order releasing petitioner from custody. It is so ordered.
REVERSED AND REMANDED WITH DIRECTIONS.
All the Justices concur.