The People of the State of New York ex rel. Margaret Cleverley Armour, Relator, *v.* Albert P. Armour, Respondent.

Supreme Court, Queens County, September 22, 1932.

*Martin C. Ansorge,* for the relator.

*Curtin & Glynn* [*Joseph R. Jackson* of counsel], for the respondent.

Wenzel, J. The only question of moment to the court in a proceeding of this nature is the welfare of the infant.

In this instance the child is five and one-half years old and has been since the divorce in the custody of the father under agreement with the mother. Both parents are desirous of having custody of the child in its formative years, each sure that its interest would be best served under his or her care and tutelage. It is truly a tragedy that the welfare of their child did not transcend their personal differences at the time of their parting, but having steeled their hearts to a disregard of their child's right and their duty, neither should now complain if the court disregards their personal desires.

Each parent admits that the other is morally and culturally fit to have custody of the child. The father admits that his former wife during the time she lived at his home was a perfect mother to the little girl, and the court does not take seriously the slight evidences claimed by the mother to be indicative of the fact that the child is being neglected in its father's home. The child herself, bright beyond her years and with a total lack of shyness one might

expect from one so young under the circumstances, expresses a preference to live with her mother. While, indeed, her readiness to assert this fact, and her eager facility of expression, creates a suspicion that she was not without coaching during the periods she spent with her mother, the court feels convinced that the child truly has a preference to stay at her mother's home. The father is a man of affluence, who can rear the child in an atmosphere of luxury and greatest comfort, far beyond the simple need of one so young. He is, however, on his own confession an ardent golfer and a yachtsman, interests not calculated to keep a man by his fireside, and while he has married again and the court is willing to credit the second Mrs. Armour with sincerity in her statement that she loves this child, she cannot take the place of a competent natural mother, who, in the words of Elizabeth Barrett Browning, knows " The way to rear up children; they know the simple, merry, tender knack of tying sashes, fitting baby shoes, and stringing pretty words that make no sense, and kissing full sense into empty words; which things are corals to cut life upon, although such trifles."

The child's greatest need at this time is not the things that money will buy, but understanding love and affection, such as can exist only between a mother and her daughter. The court will, therefore, remove the child from the care of servants with whom she says she now spends most of her time, and place her in the care and custody of her mother, with the same privileges of visitation granted to the father as have heretofore been enjoyed by the mother. The father has not been ungenerous in his allowance to the mother and arrangements may, of course, be made so that the child may be raised under circumstances befitting her station in life. Submit order on two days' notice.