**UNITED STATES of America ex rel. Clara GOLDEN, Petitioner,**

**v.**

**W. Cecil JOHNSTON, M. D., Superintendent, Matteawan State Hospital, Beacon, New York, Respondent.**

**No. 69–Civ. 2985.**

United States District Court,
S. D. New York.

Jan. 2, 1970.

Clara Golden, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent; Thomas P. Dorsey, Asst. Atty. Gen., of counsel.

MEMORANDUM

CROAKE, District Judge.

Petitioner, an inmate of Matteawan State Hospital at Beacon, New York, pursuant to an order of retention made by a justice of the New York State Supreme Court, sitting in Dutchess County on March 8, 1968, has applied to this Court for a writ of habeas corpus.

The petitioner alleges that she has been incarcerated illegally for 19 years and that a multitude of applications to obtain her release have been brought in the New York State courts over the years and she has been unsuccessful in obtaining her release. It would appear from her petition that she claims that she is not dangerously ill. As of July 18, 1969 a petition for a writ of habeas corpus was pending in the Supreme Court of Dutchess County.

The Court is now advised that since the within petition came on for hearing the State petition was dismissed without a hearing on September 5, 1969, as the petitioner refused to appear in court.[1] The judgment was entered on October 30, 1969 and a copy of the decision mailed to the attorney for the petitioner on October 31, 1969. An appeal was not timely filed.[2]

28 U.S.C. § 2254 (1966) does present some question [3] as to whether the appli-

1. In that proceeding, Milton Herman, Esq., of Newburgh, New York, was appointed by the Court pursuant to New York's Judiciary Law, McKinney's Consol.Laws, c. 30, § 35, to represent the petitioner.

2. New York Civil Practice Law and Rules § 5513(a) (McKinney's 1963) states: "An appeal as of right must be taken within thirty days after service upon the appellant of a copy of the judgment or order appealed from and written notice of its entry * * *."

3. "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the

cant has exhausted her available state remedies, or otherwise met the requirements necessary to enable her to bring on this proceeding.

 The doctrine of res judicata cannot operate to preclude further applications in the state courts for a writ because obviously the mental condition of a person may improve at any time. People ex rel. Butler v. McNeill, 30 Misc.2d 722, 219 N.Y.S.2d 722, 724. Section 7003(b) of the New York Civil Practice Law and Rules seems to leave the matter to the judge or justice to whom the application is made:

> "A court is not required to issue a writ of habeas corpus if the legality of the detention has been determined by a court of the state on a prior proceeding for a writ of habeas corpus and the petition presents no ground not theretofore presented and determined and the court is satisfied that the ends of justice will not be served by granting it." [4]

A distinction is sometimes drawn between a successive petition attacking the procedural regularity of the incarceration process and a successive petition questioning the State's determination as to mental status. While in neither case will the courts strictly apply res judicata

principles, there seems to be much more of a disposition to delve into the merits in the latter.[5] The petition referred to above was dismissed without consideration of the merits because of this petitioner's refusal to appear. The legality of the detention as to procedural regularity and her mental status has yet to be inquired into. It is not likely that the New York Supreme Court would apply the doctrine of res judicata in light of the New York State Law and the circumstances of the petitioner in the instant matter.[6] Refusal to cooperate with the courts of the State of New York is not considered a method of exhausting state court remedies.

The New York Law Journal for Tuesday, December 23, 1969 indicates that Mr. Justice Joseph H. Hawkins of the State Supreme Court held: "A patient who invokes Section 74 of the Mental Hygiene Law must be given a jury trial, if he so requests, on the issue of whether his mental condition requires his continued retention." [7]

This petition for a writ of habeas corpus is dismissed without prejudice to reapplication in the State courts if petitioner is so advised.

So ordered.

---

State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

4. The "Third Preliminary Report of the Advisory Comm. Practice and Procedure, 1959, pp. 63–64" is quoted with approval in Whitetree v. State, 56 Misc.2d 693, 699, 290 N.Y.S.2d 486, 493 (Ct. of Claims 1968) as follows: "This provision is based upon § 2244 of title 28 of the United States Code. It continues the common law and present position in this state that res judicata has no application to the writ. * * * Nevertheless, courts do not look with favor on succes-

sive applications for the writ which raise no new grounds or supply no new facts, and they may give weight to a prior refusal to grant the writ."

5. Post v. Lyford, 285 App.Div. 101, 135 N.Y.S.2d 62 (1954); People ex rel. Siskind v. Silberglitt, 5 Misc.2d 983, 162 N.Y.S.2d 325 (S.Ct. 1957); People ex rel Butler v. McNeill, 30 Misc.2d 722, 219 N.Y.S.2d 722 (S.Ct. Dutchess Cty. 1961); Whitetree v. State, n. 4 supra.

6. New York Mental Hygiene Law, § 426, (McKinney's Consol.Laws, c. 27, 1965).

7. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962). See also United States Ex rel. Schuster v. Herold, 410 F.2d 1071 (1969), wherein it was held by the U. S. Court of Appeals, 2d Cir., that a prisoner must be afforded the same procedural safeguards as provided in civil commitments before he may be transferred to a state institution for insane criminals.